FILED
2011 Aug-03 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY   }
COMMISSION,                    }
                               }
     Plaintiff,                }    CIVIL ACTION NO.
v.                             }    09-AR-1926-S
                               }
SUMMER CLASSICS, INC.,         }
                               }
     Defendant.                }
```

**MEMORANDUM OPINION**

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), is taking its fourth bite at the apple. First, before the magistrate judge it strenuously opposed the motion for summary judgment filed by defendant, Summer Classics, Inc. ("Summer Classics"). Second, it objected to the magistrate judge's report, in which the magistrate judge recommended that defendant's motion for summary judgment be granted. Third, it vigorously responded to defendant's brief filed in opposition to plaintiff's objections to the magistrate judge's report and recommendation. After this court accepted the magistrate judge's recommendation, EEOC now takes its fourth bite by invoking Rule 59(e), F.R.Civ.P., challenging both this court's decision and that of the magistrate judge.

From the very beginning of this case, EEOC, as its primary contention, has insisted that the filing of the "Intake Questionnaire" by its client, Larry Lowe, qualified as a "Charge" for the purposes of meeting the 180-day time limit for the filing of a "Charge" after the employer's last adverse employment action.

Only as an alternative, or "fallback" position, did EEOC argue that Mr. Lowe's termination occurred on March 23, 2007, and not on February 23, 2007, as the magistrate judge found.  If the last act of ADA discrimination occurred on February 23, 2007, as both the magistrate judge and this court have already found, this action is time barred, no matter how persuasive plaintiff's case may be on the merits.  Of course, if the last adverse action took place on March 23, 2007, as EEOC contends, the action is not time barred because the actual "Charge of Discrimination" was filed less than 180 days thereafter.

In its Rule 59(e) motion, EEOC does not retreat from its primary earlier insistence that the "Intake Questionnaire" is to be treated as the "Charge of Discrimination".  EEOC must still think this is its best argument. Nevertheless, it now concentrates its fire on the magistrate judge's following finding: "It is also undisputed that Lowe was terminated on **February 23, 2007**." (emphasis added).  Neither EEOC nor this court has quizzed the magistrate judge to ascertain precisely how he reached his conclusion as to the triggering date.  The finding may speak for itself, but under Rule 59(e) reconsideration, the court will examine the question again.

Insofar as the issue of whether the "Intake Questionnaire" is to be considered a "Charge", this court and the magistrate judge both have made their decisions, and their reasons have been made

perfectly clear.  They will not be repeated for the third time. But, the court will further answer EEOC's expanded argument that the "Intake Questionnaire" includes **a request for action by EEOC**, so that it meets standards for a "Charge".  This argument facially collapses from a careful reading of the entire "Intake Questionnaire".  After the "Intake Questionnaire" was submitted, there was a follow-up letter from Mr. Lowe to EEOC.  Mr. Lowe's said letter is conspicuously absent from the record.  The court does not know when it was delivered or what it said.  Mr. Lowe may simply have asked EEOC what to do next, or to express his disappointment in not finding a lawyer.  There could, of course, be other explanations for this void in the record.  The court only knows that EEOC answered Mr. Lowe on August 8, 2007, indicating that, as of August 8, 2007, EEOC had taken no action whatsoever in response to the "Intake Questionnaire".  If EEOC wants this court to take the "Intake Questionnaire" as a clarion call for action, how does EEOC explain its lack of action between the receipt of the "Intake Questionnaire" on July 21, 2007, and its letter of August 8, 2007?  Mr. Lowe later, on September 5, 2007, did ask EEOC for action in his "Charge of Discrimination", but he requested no action on July 21, 2007, in his "Intake Questionnaire".

Although the parties, the magistrate judge, and the court have all previously examined *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145 (2002), and *Federal Express v. Holowecki*, 552 U.S.

389, 128 S.Ct. 1147 (2008), for the lessons they teach, nobody has yet analyzed *Williams v. CSX Transportation Co.*, 643 F.3d 502 (6th Cir. 2005), not decided until June 28, 2011. *Williams* dealt both with *Edelman* and *Holowecki*, but on June 28, 2011, the Sixth Circuit agreed with this court's interpretation of the two earlier Supreme Court cases.  The Sixth Circuit held:

> Put differently, **a filing is a charge if an "objective observer" would believe that the filing "taken as a whole" suggests that the filer "requests the agency to activate its machinery and remedial processes"**.
> [citation omitted]

(emphasis added).

EEOC's machinery was certainly not activated by anything Mr. Lowe said on July 21, 2007.  The Sixth Circuit followed its above quoted holding with a pointed reminder that in *Holowecki* the filer had **expressly** requested EEOC in his "Intake Questionnaire" to "**[p]lease force Federal Express to end their age discrimination**."  (emphasis added). In other words, in *Holowecki* there was an unmistakable call for action. No "objective observer" could conclude that Mr. Lowe's "Intake Questionnaire" was a call for action.  It only answered EEOC's questions.  EEOC lamely argues that Mr. Lowe's statement in the questionnaire that he was "looking for a lawyer" is the equivalent of asking for EEOC action.  This is a bridge too far, a spin too much. EEOC's interpretation fails to acknowledge Mr. Lowe's plain language.  EEOC is afflicted with "after-the-fact" wishful thinking.

4

Perhaps EEOC inadvertently assumed, and wants this court to assume, that Mr. Lowe's "Intake Questionnaire", which was received within 180 days after February 23, 2007, contained the following language now contained in EEOC's latest, amended from of "Intake Questionnaire". EEOC's adoption of this amended form could very well have been prompted by the circumstances in the instant case. The court takes judicial notice of the new EEOC intake form. It has been offered to this court and to other courts as evidence in more recently filed cases. The current form of the "Intake Questionnaire" concludes with the following graphic and unmistakably significant boxes:

> **BOX 1** [ ]
>
> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I assume discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, or retaliation for opposing discrimination.
>
> **BOX 2** [ ]
>
> I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

The old form, used by Mr. Lowe, unfortunately for him and EEOC, did not include these boxes. If Mr. Lowe had used the current "Intake Questionnaire", he might have checked Box 1, and by doing so, would

have requested action by EEOC. The court, however, does not deal in what "might-have-been". The court is limited to the words contained within the four corners of Mr. Lowe's actual "Intake Questionnaire", which, as pointed out *supra*, does not request any action.  This does not mean that this court agrees with EEOC's contention that if the slightest possibility of EEOC action is hinted at by a claimant in his "Intake Questionnaire", the subsequent filing of a "Charge of Discrimination" is a mere **redundancy**.  Hypothetically, if Box 2 had been available to Mr. Lowe, EEOC would have been reiterating and reinforcing the dire warning to Mr. Lowe highlighted in the first paragraph of the intake form, new and old, clearly distinguishing between an "Intake Questionnaire" and a "Charge of Discrimination", and explaining the crucial importance of that difference.

This leaves the court to reconsider EEOC's secondary and final contention, namely, that the last act of discrimination occurred on March 23, 2007, and not on February 23, 2007, the date found by the magistrate judge and previously confirmed by this court.

Tellingly, EEOC did not file a motion for partial summary judgment respecting the triggering date.  If, as it now contends, March 23, 2007 is the undisputed date of termination, conceded by Summer Classics, EEOC would surely have wanted to eliminate the issue while Rule 56 was still available to it.  The court cannot find any such concession by Summer Classics in the record. To the

contrary, Summer Classics has always taken the position that the triggering date was February 23, 2007. After losing its phantom partial summary judgment motion, EEOC now retreats to saying that **if** there is a dispute of material fact about the triggering date, it becomes a jury triable issue. For the existence of a jury issue, EEOC hangs its hat on the fact that a letter from Summer Classics to Mr. Lowe, dated March 26, 2007, referred to his termination "**as of** March 23, 2007" (emphasis added). Mr. Lowe had been told in advance of **February 23, 2007,** that he would be terminated on **February 23, 2007,** and that he would **not be paid after February 23, 2007.** And, as promised, he was **not paid after February 23, 2007.**

### Undisputed Pertinent Evidence on the Triggering Date

1. The original complaint filed by EEOC on September 29, 2009, and not thereafter amended, nowhere alleges a date upon which Summer Classic's last alleged act of proscribed conduct occurred. Instead, it vaguely alleges: "All conditions precedent to the institution of this lawsuit have been fulfilled." EEOC undertook the burden of proving its said material allegation, which, in this particular case, happens to include the triggering date for the 180-day time limitation. **In fact, Mr. Lowe, himself, whether by mouth or in writing, has ever asserted that March 23, 2007, was the date of his termination, or was the date of any other adverse or discriminatory action.**

7

2. On February 21, 2007, Summer Classics wrote a letter to Mr. Lowe. It contained the following language:

> The purpose of this letter is to inform you that you have until Friday, **February 23, 2007,** to provide our Medical Review Officer with the requested information. If we have not received the requested information by 5:00 p.m. on Friday, we are left with no other alternative than to place you on unpaid leave and take action up to and including termination of your employment. We hope that you can provide the information by the end of the week and that you will be able to safely return to work.

(emphasis added).

3. On **March 11, 2007**, Mr. Lowe filed a claim for unemployment compensation with the Alabama Department of Industrial Relations. He obviously could not, and did not, claim that **March 23, 2007**, was his date of termination. March 23, 2007, had not yet arrived on March 11, 2007. Summer Classics responded to the compensation claim by saying, *inter alia*, "Claimant's last date of employment was 03/23/07." This was merely a repetition of a routine bookkeeping entry and is facially irreconcilable with the March 11, 2007 date upon which Mr. Lowe's compensation claim was filed.

4. On March 26, 2007, three days after March 23, 2007, Summer Classics wrote Mr. Lowe another letter, containing the following language:

> On February 21, 2007, we provided you with a letter requesting that you submit to such examination and provide the requested information no later than **February 23, 2007,** or you would be placed on unpaid leave and disciplinary action up to and including termination of

> your employment would occur . . . In view of the circumstances, the company has no alternative but to terminate your employment **effective on March 23, 2007,** for failure to provide the medical information requested.
>
> **You received your last pay check from the company on February 23, 2007. No further payments will be made**.

(emphasis added).

    5.   The said letter of March 26, 2007, did not lead Mr. Lowe to conclude that the last act of discrimination was on March 23, 2007, or on March 26, 2007, the date on the letter, or on March 27, 2007, the date Mr. Lowe probably received it. The date "March 23, 2007", as employed by Summer Classics, obviously was for its internal administrative or bookkeeping purposes, and for no substantive purpose. There is no evidence of **any real adverse action whatsoever** taken by Summer Classics *vis-a-vis* Mr. Lowe, at any time after February 23, 2007. Summer Classic's letter of March 26, 2007, merely confirmed what had happened on February 23, 2007.

    6.   On July 21, 2007, Mr. Lowe filed his controversial "Intake Questionnaire" with EEOC. In it, he never mentioned "March 23, 2007". Instead, he simply and unequivocally stated: "**I was fired on February 23, 2007.**" (emphasis added). In a supplementary attachment he said:

> I believe that the discrimination started in January 2007, but feel as though the **actual crime on Summer Classics part came on Feb. 20-23, 2007,** when I received a certified letter from Faby Clark stating that because I would not give her HIV medical records I was being terminated.

9

(emphasis added).

Mr. Lowe did not assert that anything whatsoever happened on March 23, 2007. In fact, **nothing to suggest an ADA cause of action happened on March 23, 2007.**

7. On September 5, 2007, Mr. Lowe finally got around to filing his **required** "Charge of Discrimination", using the Form 5 that had been sent to him by EEOC on August 8, 2007, and in which it again warned him that a "Charge of Discrimination" must be filed if his claim was to be **acted on** by EEOC. On August 8, 2007, EEOC was admitting that it had taken no action in response to the "Intake Questionnaire", and would take no action unless and until a "Charge" was filed. In the **actual** "Charge of Discrimination", Mr. Lowe, again, never mentioned "March 23, 2007". Instead, he declared, this time **under penalty of perjury**:

> On **February 23, 2007,** the human resources director informed me by letter that I was discharged because I failed to provide her a copy of my medical records.

(emphasis added).

Mr. Lowe's said Form 5 filed on September 5, 2007, after the 180-day expiration date, also contained the following dispositive facts that he swore to be true:

> DATE[S] DISCRIMINATION TOOK PLACE
> **Earliest      Latest**
> 02/23/2007    02/23/2007

(capitals in original; emphasis added).

8. During deposition, Mr. Lowe testified under oath,

entirely consistent with his EEOC and unemployment compensation filings, as follows:

    **Q.**    Let me show you Defendant's Exhibit 12 and tell me what that is.
    **A.**    **It's a letter from Faby Clark.**
    **Q.**    And did you receive this by mail:
    **A.**    **Yes, sir.**
    **Q.**    And it says that they terminated your employment effective March 23rd, '07; is that right?
    **A.**    **Yes, sir.**
    **Q.**    What did you do after you received this letter?
    **A.**    **It was just a couple of days after I had received the other one, so I didn't understand what the purpose of this was if she had already fired me in the previous letter.**
    **Q.**    Okay, where does she fire you in the previous letter?
    **A.**    **Right here saying if I didn't have these releases by 5:00 on Friday, that she would have no alternative than to leave [sic] my actions, terminating my employment.**

                                         \* \* \*

    **Q.**    Okay. And then going to the right, date discrimination took place, 2/23/07, that was the earliest, and 2/23/07 was the latest?
    **A.**    **Yes, sir.**
    **Q.**    And what is the significance of that date?
    **A.**    **That was my official termination date per her first letter.**

                                         \* \* \*

    **Q.**    Okay. And then on February 23rd, 2007, the human resource director informed you by letter that you were discharged because you failed to provide her a copy of my medical records; is that correct?
    **A.**    **Yes, sir.**
    **Q.**    And, again, we're referring back to this February 21 letter that states – let me find it. And that's Defendant's Exhibit 11?
    **A.**    **Yes, sir.**
    **Q.**    That says if we have not received the requested information by 5:00 p.m. on Friday, we will be left with no other alternative than to place you on unpaid leave and take action up to and including termination of your employment.

```
     A.    Yes, sir.
     Q.    And you took that to mean that you were terminated as of
the 23rd?
     A.    Yes, sir.
```

## Discussion

Mr. Lowe frankly admits that he was fired on February 23, 2007, and not on March 23, 2007.  This is proven by words out of his own mouth, by his own written statements, and by the fact that he could not have filed a claim for unemployment compensation on March 11, 2007, if his termination date had not yet arrived.  If he had had any expectation whatsoever of further employment after February 23, 2007, he gave not the slightest indication of it, that is, until EEOC latched on to it.  With everything Mr. Lowe himself has said and done, he has reinforced his own sworn belief, a belief that EEOC does not share with him, but by which both Mr. Lowe and EEOC are bound.

What if, instead of being written on **March** 26, 2007, Summer Classics's routine post-termination letter had been written on **April** 26, 2007, and the writer had therein said, "You will be effectively terminated **as of May** 23, 2007"?  Would the **last act of discrimination** have taken place on **February** 23, 2007, or on **April** 26, 2007, the date of the mailing of the letter, or on **April** 27, 2007, the date Mr. Lowe would have received the letter, or on **May** 23, 2007, the "as of" bookkeeping date?

EEOC understandably does not request equitable tolling of the

180-day limitation period. It depends solely upon the internal bookkeeping "termination date", a day upon which Summer Classics did absolutely **nothing** *vis-a-vis* Mr. Lowe. If there is any equitable principle involved here, it is that Mr. Lowe is estopped, as is EEOC vicariously. Mr. Lowe asserted under oath, more than once, that the last act of discrimination occurred on February 23, 2007. Necessity is the mother of invention, but the originally unspecified, later discovered, date is illusory. Unpaid leave, after a well communicated order of dismissal, is not an adverse employment action. It is nothing more than an internal reconciliation of the company's books.

The court recognizes that under Rule 56, F.R.Civ.P., there is no burden of proof on the non-movant. Nevertheless, the evidence above set forth, construed most favorably to EEOC, the non-movant, is not enough to meet EEOC's burden of proof of **the facts essential to making out its case**. In this case, that burden includes a proving of the date of the last discriminatory act. To reiterate, the burden is on EEOC to prove that Summer Classics's last adverse employment action occurred less than 180 days before the "Claim" was filed. EEOC does not, and cannot, meet this burden.

In effect, EEOC is Mr. Lowe's lawyer. A lawyer cannot gainsay what his client has consistently, under oath, asserted. In *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007), the Supreme Court held that a genuine issue of material fact cannot be created merely

by the non-movant's version of a dispositive fact **if his said contention is simply beyond belief**. Obviously, such circumstances are rare. They did, however, exist in *Scott v. Harris*, and do exist in this case. A party cannot claim a dispute of material fact if he contradicts what he has previously and unequivocally said under penalty of perjury. *See Thomas v. Alabama Council on Human Relations*, 248 F.Supp. 2d 1105 (M.D.Ala. 2003); MOORE'S FEDERAL PRACTICE 3rd, §56.94[5][a]. There is no point in waiting for Summer Classic's inevitable Rule 50 motion. To present this case to a jury would be a waste of judicial time and effort, as it was in *Scott v. Harris*. All of the undisputed evidence pertinent to the triggering date is now before the court.

There are two decisions by the Eleventh Circuit that, singly, and in combination, resolve any remaining legal question. The first is *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558 (11th Cir. 1992). The other is *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999). In *Baldwin County*, the Eleventh Circuit held:

> The [Supreme] Court has instructed, therefore [referring to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986)] that the trial judge "must view the evidence presented **through the prism of the substantive evidentiary burden**" when deciding a summary judgment motion.

(emphasis added).

*Id*. at 1563.

The "substantive evidentiary burden" of proving the triggering date

14

is on EEOC, as pointed out *supra*.  In *Mendoza*, the *en banc* Eleventh Circuit slammed the door on EEOC even tighter, holding:

> Although the existence of a genuine issue of material fact precludes judgment as a matter of law, "**a jury question does not exist because of the presence of a 'mere scintilla of evidence'**". [citation omitted]  A motion for judgment as a matter of law will be denied only if "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." [citation omitted]  These standards require us to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law".  [citation omitted]  "**If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the {Rule 56} motion was properly granted**. [citation omitted].

(emphasis added).

If a jury were allowed to see and hear all of the evidence above outlined, a motion filed by Summer Classics pursuant to Rule 50, would have to be granted.  There is no way that a reasonable jury would conclude on this evidence that the last employment action adverse to Mr. Lowe occurred on March 23, 2007.  If the passing references by Summer Classics to "March 23, 2007", in its wind-up correspondence constitutes a **scintilla of evidence** on the issue, it is totally overwhelmed by the other evidence, by logic, and by estoppel.  Any conclusion other than that previously reached by the magistrate judge and by this court, cannot be justified unless by understandable sympathy for Mr. Lowe, and perhaps by understandable sympathy for EEOC.  It cannot be justified by the

15

law as this court understands the law.

## Conclusion

A separate order denying EEOC's Rule 59(e) motion will be entered.

DONE this 3rd day of August, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE